NORRED LAW, PLLC
Clayton L. Everett, State Bar No. 24065212
515 E. Border Street | Arlington, Texas 76010
Telephone: (817) 704-3984 | clayton@norredlaw.com
Counsel for Blue Clouds Health Care Incorporated

United States Bankruptcy Court
Northern District of Texas
Fort Worth Division

| | |
|---|---|
| **In re:**<br>**BLUE CLOUDS HEALTH CARE INCORPORATED.**<br>729 N Fielder Rd Ste A<br>Arlington, TX 76012<br>Tax ID / EIN: 90-0908505<br><br>**Debtor** | **Case No. 26-42540-elm**<br><br>**Chapter 11**<br><br>**[Subchapter V Case]** |

**DEBTOR'S SUBCHAPTER V PLAN OF REORGANIZATION**
(Dated September 8, 2026)

## I. Introduction

Blue Clouds Health Care Incorporated (the "Debtor") proposes this Subchapter V Plan of Reorganization (the "Plan") under 11 U.S.C. §§ 1181–1195. The Plan provides for continuation of the Debtor's medical clinic, retention of existing ownership, valuation and treatment of asserted secured claims, and payment of administrative, priority, secured, and general unsecured claims from future operating cash flow. This Plan includes a Motion to Value Collateral under 11 U.S.C. § 506(a) and Bankruptcy Rule 3012.

## II. Background

- Debtor: Blue Clouds Health Care Incorporated, d/b/a Treat Now Family Clinic and Psychiatry.
- Case Filed: June 8, 2026.
- Subchapter V Trustee: Frances A. Smith.

- Business: Family and psychiatric medical clinic operating at 729 N. Fielder Road, Suite A, Arlington, Texas 76012.
- Scheduled Assets: approximately $208,446.29, including accounts receivable, office/clinical equipment, inventory, cash, and a 2024 Lexus LX.
- Senior Blanket Lien: the U.S. Small Business Administration ("SBA") asserts a blanket security interest in substantially all business personal property, including accounts and health-care insurance receivables.
- Ownership: Catherine O'Connor will retain 100% of the equity of the reorganized Debtor and continue operating the clinic.
- Plan Funding: ongoing business operations and future disposable income.

## III. Treatment of Claims and Interests

### A. Administrative Expenses and Professional Fees

Allowed administrative expenses shall be paid as required by the Bankruptcy Code or as otherwise agreed. The Debtor initially agreed to pay Norred Law, PLLC a total of $15,000.00 in connection with the filing and prosecution of this case, which amount included the $1,738.00 Chapter 11 filing fee paid to the Clerk. The Debtor has paid $10,000.00 toward that initial obligation, leaving an estimated unpaid balance of $5,000.00 as of September 8, 2026, subject to Court approval and applicable fee-application requirements. **Nothing in this Plan limits the right of Norred Law, PLLC, or any other retained professional, to seek allowance and payment of additional compensation or reimbursement of expenses for services rendered before or after confirmation, to the extent permitted by the Bankruptcy Code, applicable Bankruptcy Rules, any applicable employment order or fee agreement, and further order of the Court**.

**MOTION TO VALUE COLLATERAL UNDER**
**11 U.S.C. § 506(a) AND BANKRUPTCY RULE 3012**

NOTICE: Confirmation of this Plan may modify the rights of creditors asserting secured status. At the specific request of the Court, and pursuant to 11 U.S.C. § 506(a) and Bankruptcy Rule 3012, the Debtor includes this Motion to Value within the Plan and moves the Court to determine the amount of the secured claims identified below. Confirmation of this Plan shall constitute a hearing on valuation to the fullest extent permitted by applicable law and the procedures approved by this Court.

The Debtor asserts that the U.S. Small Business Administration ("SBA") holds the senior blanket lien on the Debtor's business personal property, including accounts, health-care insurance receivables, deposit accounts, inventory, equipment, general intangibles, and proceeds. SBA filed Claim No. 14 in the amount of $192,794.61 and itself identifies $122,363.29 as secured. The Debtor accepts $122,363.29 as the secured amount of Claim No. 14 for Plan purposes, without prejudice to any other objection not expressly resolved by this Plan.

The Debtor further asserts that the value of the common business collateral does not exceed the amount of SBA's senior secured claim. After application of SBA's senior lien, no value remains to support the later-filed blanket liens asserted by Bankers Healthcare Group, LLC (Claim Nos. 4 and 5), EBF Holdings, LLC d/b/a Everest Business Funding (Claim No. 6), iLend Advance LLC (Claim No. 11), or ODK Capital, LLC (Claim No. 12) (collectively, the "Junior Blanket-Lien Claims").

Accordingly, pursuant to 11 U.S.C. § 506(a), the value of collateral securing each Junior Blanket-Lien Claim is $0.00. Each such claim shall be treated as a Class 4 General Unsecured Claim. This Plan treatment constitutes a Motion to Value under Bankruptcy Rule 3012 and, to the extent applicable, an objection to secured status. Upon confirmation and entry of an order determining a Junior Blanket-Lien Claim to have collateral value of $0.00, any lien securing such claim shall be void, released, or otherwise treated as provided in the Confirmation Order and applicable law.

Nothing in this Plan concedes the validity, attachment, perfection, priority, enforceability, or extent of any asserted Junior Blanket-Lien Claim except as expressly determined by the Court. The Debtor reserves all claims, defenses, objections, avoidance rights, and causes of action concerning such asserted liens.

**B. Class 1 – SBA Secured Claim**

SBA Claim No. 14 shall be treated as secured in the amount of $122,363.29. SBA shall retain its lien to the extent of its Allowed Secured Claim. The Debtor shall continue making

monthly payments of $1,022.00, or such other amount as may be required under the applicable SBA loan documents or agreed treatment, at the contractual interest rate of 3.75% until the Allowed Secured Claim is paid according to its applicable contractual maturity, unless otherwise agreed. The remaining portion of Claim No. 14, presently approximately $70,431.32, shall be treated as a Class 4 General Unsecured Claim.

**C. Class 2 – Toyota Finance / 2024 Lexus LX**

The Debtor will retain the 2024 Lexus LX and continue making all required payments directly to Toyota Finance under the existing contract terms. Toyota Finance shall retain its lien. Payments shall be made outside the Plan and shall not be administered by the Subchapter V Trustee or disbursing agent, except as otherwise ordered.

**D. Class 3 – Other Allowed Secured / Purchase-Money Claims**

Any other Allowed Secured Claim secured by specifically identified collateral, including any allowed purchase-money security interest of USB Equipment Finance in the Debtor's cryotherapy equipment, shall retain its lien and be paid direct under the applicable contract terms unless the Debtor and creditor agree otherwise. This Class does not include the Junior Blanket-Lien Claims subject to the Motion to Value above.

**E. Class 4 – General Unsecured Claims**

Class 4 consists of all Allowed nonpriority unsecured claims, including WEM Concept & Design LLC, credit card and other unsecured claims, the unsecured portion of SBA Claim No. 14, and all Junior Blanket-Lien Claims valued at $0.00 secured under this Plan. The Debtor shall distribute $4,500.00 per month pro rata to holders of Allowed Class 4 Claims for sixty (60) months, beginning on the first full month after the Effective Date. The initial Class 4 commitment is $270,000.00. In addition, any portion of the separate $500.00 monthly administrative reserve that

is no longer reasonably necessary to pay or reserve for Allowed Administrative Expenses shall be added to Class 4 distributions. Thus, total Plan funding may reach $300,000.00 over sixty months, subject to the payment of Allowed Administrative Expenses.

**F. Priority Claims**

Allowed priority claims under 11 U.S.C. § 507 shall be paid in full as required by 11 U.S.C. § 1129(a)(9), unless the holder agrees to different treatment. Only claims actually entitled to priority under applicable law shall receive priority treatment; nothing in the Debtor's schedules constitutes an admission that a scheduled claim is entitled to priority.

**G. Class 5 – Equity Interests**

Catherine O'Connor shall retain 100% of the equity interests in the reorganized Debtor and shall continue to manage and operate the clinic, subject to the terms of this Plan and applicable law.

## IV. Consensual Release of Catherine O'Connor

**NOTICE OF THIRD-PARTY GUARANTY RELEASE AND OPT-OUT RIGHT**

THIS PROVISION AFFECTS RIGHTS AGAINST CATHERINE O'CONNOR PERSONALLY. Each holder of a Claim that receives actual notice of the Plan, the confirmation hearing, and the opportunity and procedure to opt out of this release shall be deemed to consent to the release described below unless that holder timely and properly opts out in the manner stated in the Court-approved solicitation or confirmation-notice materials.

Each holder that does not timely opt out (a "Releasing Creditor") shall, effective on the Effective Date, release and forever discharge Catherine O'Connor from liability arising solely from any guaranty, co-obligor agreement, or other contractual undertaking by which Catherine O'Connor is personally liable for the same debt owed by the Debtor to that Releasing Creditor (the "Released Guaranty Claims"). The release does not extend to independent claims based on fraud, willful misconduct, or obligations unrelated to the Debtor's debt.

A holder may preserve all Released Guaranty Claims by timely opting out through the separate opt-out mechanism stated in the solicitation package, ballot, notice of confirmation hearing, or other Court-approved notice. A vote to accept or reject the Plan is separate from the decision whether to opt out. Failure to vote, failure to return a ballot, or failure otherwise to respond shall

constitute consent to the release if the holder received actual and adequate notice of the release and opt-out procedure.

This release is intended to be consensual, not a nonconsensual third-party discharge. The Debtor will request findings at confirmation that the notice and opt-out procedures were clear, conspicuous, easy to use, separately stated from Plan voting, and sufficient to establish consent under applicable law. To the maximum extent permitted by law, the Confirmation Order shall permanently enjoin each Releasing Creditor from prosecuting a Released Guaranty Claim against Catherine O'Connor.

**Mutual Release**. In consideration of the treatment and distributions provided under this Plan, Catherine O'Connor's continued management and operation of the Debtor, and the mutual releases set forth herein, each holder of a Claim that does not timely opt out shall release and forever discharge Catherine O'Connor from any guaranty, co-obligor, or other contractual liability arising from the same debt owed by the Debtor to such holder. In exchange, the Debtor and Catherine O'Connor shall release and forever discharge such holder, and its predecessors, successors, assigns, officers, employees, agents, and professionals, from any and all claims, causes of action, defenses, counterclaims, or liabilities arising out of or relating to the prepetition financing transaction giving rise to such holder's Claim, including claims based on recharacterization of any purported sale or assignment of receivables, usury, excessive or unenforceable interest or fees, lender liability, equitable subordination, setoff, recoupment, avoidance, or similar theories, except for rights and obligations arising under this Plan, the Confirmation Order, or any separate written settlement.

**The foregoing reciprocal release shall not waive any objection to the amount, allowance, secured status, priority, perfection, or valuation of the creditor's Claim to the extent such matters are expressly preserved or determined under this Plan or the Confirmation Order.**

## V. Means of Implementation

1. The Debtor will continue operating Treat Now Family Clinic and Psychiatry at its Arlington, Texas location.

2. Catherine O'Connor will retain ownership and continue managing the reorganized Debtor.

3. The Debtor will fund the Plan from ordinary course operating revenue and future disposable income.

4. The Debtor shall act as disbursing agent unless otherwise ordered and shall make the monthly Class 4 and administrative reserve payments required by this Plan.

5. The Debtor's monthly facility obligation of approximately $4,375.00 will continue as an ordinary-course operating expense. To the extent the occupancy arrangement with C&O O'Connor Holding, LLC constitutes an executory contract or unexpired lease, the Debtor intends to assume that arrangement and continue monthly payments, with any required cure to be determined or agreed before confirmation.

6. The Debtor will maintain ordinary course insurance, licenses, credentialing, payroll, taxes, medical record systems, and other expenses reasonably necessary to preserve the clinic as a going concern.

7. All estate causes of action, claim objections, lien objections, avoidance actions, setoff rights, and other claims not expressly released by this Plan are preserved and vest in the reorganized Debtor on the Effective Date.

## VI. Projections and Feasibility

The Debtor's normalized cash-collateral budget projects approximately $80,000.00 in monthly operating collections and approximately $69,367.31 in normalized monthly outflows, producing a projected operating surplus of approximately $10,632.69 before one-time items. Historical January through early June 2026 results reflected positive net operating income. The Plan deliberately commits a lower amount than the normalized projected surplus in order to maintain a reasonable operating cushion for fluctuations in insurance collections, payroll, supplies, repairs, credentialing, medical expenses, and other business needs.

**Projected Monthly Plan Funding**

| Period | Class 4 Unsecured | Admin Reserve | Total Monthly |
|---|---|---|---|
| Year 1 | $4,500 | $500 | $5,000 |
| Year 2 | $4,500 | $500 | $5,000 |

| | | | |
|---|---|---|---|
| Year 3 | $4,500 | $500 | $5,000 |
| Year 4 | $4,500 | $500 | $5,000 |
| Year 5 | $4,500 | $500 | $5,000 |
| **60-Month Total** | **$270,000** | **Up to $30,000** | **Up to $300,000** |

After Allowed Administrative Expenses have been paid or adequately reserved, unused amounts otherwise designated for the administrative reserve shall be distributed pro rata to Class 4. The Debtor may prepay Plan obligations without penalty.

**VII. Liquidation Analysis**

The Debtor believes Class 4 will receive more under this Plan than in a hypothetical Chapter 7 liquidation. The Debtor's scheduled assets total approximately $208,446.29, including a Lexus subject to Toyota Finance's lien and operating assets subject to SBA's senior blanket lien. After payment of secured claims, liquidation costs, Chapter 7 trustee compensation, professional fees, and other priority or administrative expenses, little or no value would remain for general unsecured creditors. By contrast, this Plan commits at least $270,000.00 of future operating cash flow to Class 4, plus any unused administrative reserve.

**VIII. Acceptance and Confirmation**

The Debtor will seek consensual confirmation under 11 U.S.C. § 1191(a) if the statutory requirements are satisfied. If consensual confirmation is unavailable, the Debtor requests confirmation under 11 U.S.C. § 1191(b). In that event, the Debtor asserts that the Plan is fair and equitable and commits the Debtor's projected disposable income, or value not less than such projected disposable income, for the applicable three-to-five-year period as determined by the Court. The Debtor reserves the right to amend the Plan before confirmation as permitted by law.

## IX. Plan Administration and Default

Plan payments shall begin on the first full month after the Effective Date. The Debtor shall make required post-confirmation reports until substantial consummation or as otherwise required. A creditor asserting a material payment default shall give the Debtor written notice and a fourteen-day opportunity to cure before seeking relief, unless the Court orders otherwise. Substantial consummation shall occur upon commencement of distributions and assumption of management of substantially all property dealt with by this Plan.

## X. Discharge

The Debtor shall receive the discharge available under 11 U.S.C. § 1192 upon completion of all payments due within the period prescribed by § 1191(c), except for debts excluded from discharge by applicable law. The Debtor's discharge is separate from, and does not itself create, the consensual third-party release addressed in Article IV.

Respectfully Submitted:

BLUE CLOUDS HEALTH CARE INCORPORATED

[signature]

Catherine O'Connor, President

Date: 9/8/2026

Prepared by:
NORRED LAW, PLLC

/s/ Clayton L. Everett
Clayton L. Everett
State Bar No. 24065212
515 E. Border Street
Arlington, Texas 76010
Telephone: (817) 704-3984
clayton@norredlaw.com
Counsel for Debtor